### JAMES E. BENNETT & CO. et al. v. ROBINSON.

No. 22527.　Dec. 27, 1934.

Simons, McKnight, Simons & Mitchell, for plaintiffs in error.

W. H. Hills, for defendant in error.

PER CURIAM. This action was commenced in the district court of Garfield county by C. A. Robinson, defendant in error, against James E. Bennett & Company, a copartnership, et al., plaintiffs in error.

The defendant in error in his petition alleges that he purchased from the plaintiffs in error 2,000 bushels of wheat to be delivered to him in the month of December, 1929, and that he paid down on said purchase price the sum of $200, reserving his right, however, to sell said wheat on the open market if he so decided, and that thereafter he exercised his right to sell by instructing the plaintiff in error to sell the wheat for him if the price receded to $1.50 per bushel, which order is termed a stop order. He further alleges that the plaintiffs in error accepted the order to sell and confirmed same, but that they thereafter breached the contract either through an oversight or neglect and failed to sell the wheat until the price receded to $1.18 per bushel, causing the defendant in error to lose approximately $650. Plaintiffs in error allege that if the stop order was ever given, it was canceled. They also claim that the plaintiff did not purchase any wheat from the defendants, but that he placed an order with the defendants as his brokers and agents for the purchase of 2,000 bushels of wheat commonly known as Chicago December wheat for $1.25¼ per bushel. The agreement which was prepared by the plaintiffs in error contained the following clause:

"All orders for the purchase or sale of securities and/or commodities are accepted with the distinct understanding that actual receipt of delivery is intended."

However, in considering this case, it is immaterial whether it was purchased from them or through them as brokers.

Plaintiffs in error, in their belief, state the issues as follows:

"First. Did the plaintiff cancel the selling order in question?

"Second. If the plaintiff did not cancel such selling order and after knowledge of the fact had been brought home to him that such selling order had not been executed, was it not then the duty of the plaintiff to give these defendants orders concerning the sale and future disposition of this wheat?"

The court gave the following instruction:

"You are further instructed that among other defenses in this case the defendants claim that the plaintiff canceled the selling order to sell his wheat when it reached $1.50 per bushel on the Chicago market and which order had been previously communicated to the defendants at their local branch office in Enid, Okla. In this connection such cancellation could be made by the plaintiff either orally or in writing. If in this connection you find from the evidence in this case, that the plaintiff did cancel such selling order at $1.50, and thereafter gave the defendants no further directions concerning the sale and disposal of such wheat, that then and in that event your verdict should be for the defendants."

The court refused to give certain instructions requested by plaintiffs in error. Under the instruction above set forth, the jury in effect, found that the defendant in error herein (plaintiff in the trial court) had given the stop "order" as he contended, and had given no further directions concerning the sale and disposal of the wheat. The material issue of fact centered around this point. After he had given this stop order, it was not necessary for him to give plaintiff in error further directions as to the sale or disposition of the wheat unless he chose to do so.

The instructions given, taken as a whole, fairly and reasonably present the issues joined by the pleadings and presented by the evidence, and there was no error in failing to give the requested instructions. Upon the material question of fact, the jury found against the defendant. Therefore, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. F. Brett, Chas. G. Watts, and W. O. Rittenhouse in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Brett, and approved by Mr. Watts and Mr. Rittenhouse, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.